UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | |
|---|---|
| CENTILLION DATA SYSTEMS, LLC., )<br>         Plaintiff,                                       )<br>                                                                  )<br>     vs.                                                          )<br>                                                                  )<br>CONVERGYS CORPORATION, QWEST     )<br>COMMUNICATIONS INTERNATIONAL, and)<br>QWEST CORPORATION,                             )<br>         Defendants,                                     )<br>-------------------------------------------------------- )<br>QWEST CORPORATION and QWEST           )<br>COMMUNICATIONS CORPORATION,         )<br>         Plaintiffs,                                       )<br>                                                                  )<br>     vs.                                                          )<br>                                                                  )<br>CENTILLION DATA SYSTEMS, LLC., and   )<br>CTI GROUP (HOLDINGS), INC.,                 )<br>         Defendants.                                    )  | 1:04-cv-0073-LJM-WTL |

**ORDER ON DEFENDANTS' & COUNTERCLAIM PLAINTIFF'S
MOTION FOR SANCTIONS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

This cause is now before the Court on defendants', Qwest Communications International, Qwest Corporation, and Qwest Communications Corporation, and counterclaim plaintiff's, Qwest Communications Corporation (collectively "Qwest"), Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 ("Rule 11").[1]  Qwest contends that plaintiff, Centillion Data Systems LLC ("Centillion"), failed to make an appropriate pre-filing investigation into its infringement allegations against Qwest.  In particular, Qwest challenges Centillion's allegation that Qwest infringes the

---

[1] Plaintiff, Centillion Data Systems LLC, has moved to maintain under seal certain exhibits for *in camera* inspection.  The Court **GRANTS** the motion, but notes that references to those exhibits herein are vague enough that sealing of this order is unwarranted.

"means for transferring" element of claim 1 of U.S. Patent No. 5,287,270 (the "'270 patent"), under the doctrine of equivalents.  Qwest argues that Centillion's reliance on the doctrine of equivalents is wrong as a matter of law.  Moreover, Qwest avers that Centillion never obtained a copy of the allegedly infringing software so that it could properly analyze whether or not the product infringed.  These failures, Qwest contends, evidence that Centillion's pre-filing infringement analysis and factual analysis were not objectively reasonable, which makes Rule 11 sanctions appropriate.  Qwest argues that dismissal of Centillion's claims with prejudice, and attorneys' fees for the entire litigation is an appropriate sanction.

Centillion argues that it obtained all the information it needed to make a pre-filing factual and infringement analysis from Qwest's public statements about its software and from a report it obtained from an independent investigator who conducted what Centillion terms as "a detailed investigation of Qwest's billing analysis products." Pl.'s Opp'n Br. at 2.  Centillion claims that it used this information coupled with its own knowledge of the '270 patent and its prosecution history to make a good faith, informed comparison of the claims of the '270 patent and Qwest's billing analysis software product line.  Moreover, Centillion contends that the instant motion is an attempt to have the Court rule on the merits of the case without the benefit of discovery, and meets the Rule 11 standard for frivolity itself.

For the reasons discussed herein, the Court **DENIES** Qwest's Motion for Sanctions.

## I. DISCUSSION

Because the issue of Rule 11 sanction is a procedural issue that is not unique to patent law, the Court applies the law of the Seventh Circuit.  *See Power Mosfet Tech., LLC v. Siemens AG*, 378

F.3d 1396, 1407 (Fed. Cir. 2004). Under Seventh Circuit law "a court may impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose. In particular, a frivolous argument or claim is one that is 'baseless and made without a reasonable and competent inquiry.'" *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (*en banc*)). The test is an objective one. *See Thompson v. Duke*, 940 F.2d 192, 195 (7th Cir. 1991).

In the first instance, Qwest asks the Court to delve into the merits of Centillion's infringement analysis; in other words, Qwest asks the Court to interpret a key claim of the '270 patent before any claim construction hearing has been held or motion for summary judgment has been filed. The Court refuses to make these types of determinations at this stage of the litigation. *Cf. Cooter & Gell v. Harmarx Corp.*, 496 U.S. 384, 396 (1990) (stating that determination that a Rule 11 sanction is appropriate "is not a judgment on the merits," nor even "a district court's assessment of the legal merits of the complaint," but rather "requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate"). To the extent that Qwest's current motion seeks a determination on the merits, it is premature and the Court declines Qwest's invitation to decide the merits on the current record. To the extent that Qwest seeks to assert that Centillion's allegations of infringement are legally flawed and frivolous on their face, the Court cannot agree at this stage of the litigation.

In the second instance, Qwest challenges Centillion's factual inquiry into Qwest's allegedly infringing software products. Qwest contends that an objectively reasonable patent holder would have obtained a copy of the allegedly infringing software and at least used it before it determined that

3

the software infringed the '270 patented software. Qwest argues that this failure is patently unreasonable. Centillion counters that it utilized a third-party analysis of the software, and Qwest's own publicly available information about the allegedly infringing software to determine that each element of the '270 patent claims read on Qwest's products. Centillion contends that its analysis would not have been changed by obtaining and testing the software product itself.

The Court agrees with Qwest, that under the circumstances presented in this case, Centillion's failure to obtain copies of the allegedly infringing software and to use it is to ascertain more about how the software functions was objectively unreasonable. Centillion asserts that the information it had about how Qwest's software worked allowed it to adequately assess whether the software infringed each element of the '270 patent. But, the Court has reviewed that information and finds it is largely advertising fluff, including the "analysis" provided by the independent investigator. The advertising information that Centillion relied upon does not clarify how the customer-defined reports are generated. In other words, the product features do not indicate whether there is a "means for transferring" the customer-defined reports from the "data processing means to said personal computer data processing means" as required by the '270 patent. The list of product features clearly identifies the myriad of reports that the Qwest software can generate, as well as the flexibility allowed to the customer, but these product features are not the elements of the patent. Centillion's analysis of the product features to develop its infringement analysis uses too many inferences that should have been investigated.

Centillion argues that it would not have changed its analysis if it had obtained Qwest's allegedly infringing software because it already had the data it needed and because it could not have reverse engineered the software code pursuant to Qwest's licensing agreements. But Centillion did

not have the data it needed to ensure that Qwest's software met every element of the claimed invention, either literally or under the doctrine of equivalents. Centillion only had product features from which it inferred that Qwest's software should perform in a certain way. Moreover, the Court would not expect Centillion to violate a licensing agreement or other law to make a factual inquiry into potential infringement. In this case, obtaining the software and testing its limitations on manipulating and/or receiving data would have given Centillion a factual basis from which to conclude that Qwest's software did in fact exhibit each of the '270 patent's limitations.

Centillion relies upon two Federal Circuit cases for the proposition that it need not have actually obtained the allegedly infringing product to have performed an objectively reasonable pre-filing investigation: *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004), and *Antonious v. Spalding & Evenflow Cos.*, 275 F.3d 1066 (Fed. Cir. 2002), *reh'g denied*.[2] In both cases, the Federal Circuit stated that Rule 11 requires "at a minimum, that an attorney interpret the asserted patent claims and compare the accused [product] with those claims before filing a claim alleging infringement." *Q-Pharma*, 360 F.3d at 1300-01 (citing, *inter alia*, *Antonious*, 275 F.3d at 1072). Whether the patent owner must obtain the product an analyze it, according to the Federal Circuit, depends on the circumstances surrounding the pre-filing infringement analysis. *Id.* at 1301-02.

In *Q-Pharma*, the patent covered a product whose "principal active ingredient" was a certain chemical. *Id.* at 1301. The patentee read the limitation broadly, to include any product that used a

---

[2]The Court notes that the procedural posture of both *Q-Pharma* and *Antonious* were different than this case. In both of those cases, the district court decided the issue of sanctions after the summary judgment phase of the litigation. Therefore, both the *Q-Pharma* and *Antonious* courts addressed the legal inquiry sufficiency of the pleadings in those cases as well as the factual inquiry sufficiency.

therapeutic amount of the chemical. *Id.* The patentee relied upon the advertising of the alleged infringer and the listed ingredients on the product to file its claims of infringement. The Federal Circuit determined that the patentee's reliance on advertising claims and labeling of the alleged infringer's product, without a chemical analysis of the product, was reasonable, particularly in light of the patentee's non-frivolous interpretation of the patent. *Id.* at 1302. Moreover, the *Q-Pharma* court emphasized that the patentee's analysis was buttressed by its having obtained a sample of the allegedly infringing product, and having reviewed not only the advertising, but also the labeling of the product to determine that infringement was probable. *Id.*

Unlike in *Q-Pharma* where the patentee had obtained all the necessary information from advertisements and the actual label from the product itself to determine that the necessary ingredient met the patentee's interpretation of the claims, Centillion did not have the necessary factual information from Qwest's product literature, website or Centillion's independent investigator, to determine whether the "means for transferring" limitation was met. In other words, there was no ingredient list from which Centillion could make the inference that summary reports were generated on the "data processing means" away from the customer's computer and then transferred to the customer's computer via the "means for transferring."

In *Antonious*, the patent was directed to an improved perimeter weight structure for metal golf club heads. *Antonious*, 275 F.3d at 1069. After analysis of a single allegedly infringing metal wood, review by sight of other allegedly infringing metal woods, and product literature, the patentee filed suit against the alleged infringer claiming that twenty-one products infringed the patent. *Id.* at 1075. In fact, not all of the alleged infringer's products had the relevant disputed structure. In assessing whether the patentee's attorneys had made the requisite factual inquiry, the Federal Circuit

6

stated that

> when a number of different products are charged with infringement it is not always necessary for the plaintiff's attorneys to inspect each product separately to verify the facts on which the plaintiff bases its infringement allegations. At a minimum, however, the evidence uncovered by the patent holder's investigation must be sufficient to permit a reasonable inference that all the accused products infringe.

*Id.* The Federal Circuit remanded *Antonious* to the district court for further fact-finding on the reasonableness of the patentee's attorneys' inquiry. *Id.* at 1076.

Even if the Federal Circuit had decided that the inquiry by the patentee's attorneys in *Antonious* was objectively reasonable, the Federal Circuit did not find that no analysis of the existing product was *per se* reasonable. Moreover, unlike the golf clubs at issue in *Antonious*, in this case, it is computer software that is at issue, which based on the nature of the product, may function in a myriad of different ways, yet produce the same result, or allow its creator to advertise the same feature.

In summary, the Court finds that Centillion's factual inquiry was objectively unreasonable because Centillion, nor its lawyers, never actually tested the allegedly infringing products to see if they met each of the '270 patent's limitations. However, the Court finds that a sanction in this case is inappropriate. Qwest boasts that it raised the issue of Centillion's inquiry to Centillion before this cause was filed. Yet, it waited nearly two years after the filing of this suit, and over a year after the filing of its answer to bring the issue to the Court's attention. Having waited so long to formally challenge Centillion's action, Qwest can hardly say that it has been prejudiced by the filing of the complaint. Moreover, Qwest is not prejudiced by the factual deficiency because Centillion has made clear to Qwest from the start what aspects of Qwest's products Centillion claims infringes each element of the '270 patent's claims. In other words, Qwest has always been on notice that Centillion

7

considers certain features of Qwest's software products to infringe certain elements of the '270 patent's claims. In addition, because Qwest makes no specific denials of infringement, it cannot say it has been prejudiced by Centillion's inferences. For these reasons, the Court finds that no sanctions are appropriate.

Finally, Centillion requested that the Court find Qwest's instant motion frivolous and appropriately sanction Qwest for its dilatory rather than substantive filing. Having found at least a portion of Qwest's argument persuasive, the Court declines Centillion's invitation to find Qwest's motion frivolous to the point of warranting sanctions.

## II. CONCLUSION

For the foregoing reasons, the Court **DENIES** defendants', Qwest Communications International, Qwest Corporation, and Qwest Communications Corporation, and counterclaim plaintiff's, Qwest Communications Corporation, Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11. Plaintiff's, Centillion Data Systems LLC, Motion to Maintain Under Seal Exhibits for *In Camera* Inspection is **GRANTED**.

IT IS SO ORDERED this 4th day of January, 2006.

*[signature]*
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Electronically distributed to:

Vincent J. Belusko
MORRISON & FOERSTER LLP
vbelusko@mofo.com

David C. Campbell
BINGHAM MCHALE LLP
dcampbell@binghammchale.com

James Dimos
LOCKE REYNOLDS LLP
jdimos@locke.com

Phillip J. Fowler
BINGHAM MCHALE LLP
pfowler@binghammchale.com

Hector G. Gallegos
MORRISON & FOERSTER LLP
hgallegos@mofo.com

Michael C. Greenbaum
BLANK ROME, LLP
greenbaum@blankrome.com

Edward Han
HOWREY SIMON ARNOLD & WHITE LLP
hane@howrey.com

Denise Catherine Lane-White
BLANK ROME, LLP
lane-white@blankrome.com

Brad R. Maurer
BAKER & DANIELS
brad.maurer@bakerd.com

Grant S. Palmer
BLANK ROME, LLP
palmer@blankrome.com

Randall R. Riggs
LOCKE REYNOLDS LLP
rriggs@locke.com

James W. Riley Jr.
RILEY BENNETT & EGLOFF LLP
jriley@rbelaw.com

Hemant Keeto Sabharwal
BLANK ROME, LLP
sabharwal@blankrome.com

Brian Sherwood Seal
HOWREY, LLP
sealb@howrey.com

Matthew J. Siembieda
BLANK ROME, LLP
siembieda@blankrome.com

Leonard D. Steinman
BLANK ROME, LLP
lsteinman@blankrome.com

Joel E. Tragesser
LOCKE REYNOLDS LLP
jtragesser@locke.com

Mark D. Wegener
HOWREY SIMON ARNOLD & WHITE
wegenerm@howrey.com

Peter S. Weissman
BLANK ROME, LLP
weissman@blankrome.com

Michael Douglas White
BLANK ROME, LLP
white@blankrome.com


Distributed via U.S. Postal Service to:

Jill Morgan Ballo
DAVIS WRIGHT TREMAINE LLP
1501 4th Ave., Suite 2600
Seattle, WA 98101-1688