**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **CENTILLION DATA SYSTEMS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **CAUSE NO.  1:04-cv-73-LJM-WTL** |
| | ) | |
| **CONVERGYS CORPORATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| **QWEST CORPORATION, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **CENTILLION DATA SYSTEMS, LLC,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ENTRY REGARDING MOTION TO COMPEL**

This cause is before the Magistrate Judge on the motion to compel filed by

Plaintiff/Counterdefendants Centillion Data Systems, LLC, and CTI Group (Holdings), Inc.,

(collectively "Centillion") entitled Motion to Compel the Production of Convergys' Software

Products.  The motion is fully briefed and the Magistrate Judge, being duly advised, **GRANTS**

the motion for the reasons set forth below.

Centillion claims in this case that the Defendants are "offering for sale, selling, making,

and using all or a material part of an infringing method and system for electronic billing,

processing, reporting and analysis of telephone charges."  Second Amended Complaint at ¶ 14.

In the instant motion, Centillion requests that the Court

order Defendant Convergys Corporation ("Convergys") to produce its Geneva,

> Infinys, Atlys, ICOMS and WIZARD software products (collectively "the
> Software Products"), including the server/back-end portion, any and all
> accompanying manuals, source code and data, and make available for inspection
> and testing any and all systems containing or comprising the Software Products so
> that Centillion's expert can examine each system with any and all necessary
> software tools [collectively "the Software Discovery"].

The dispute between the parties is two-fold.  The first issue is whether Centillion is entitled to

discovery regarding all of the Software Products, or whether discovery should be limited to the

Geneva Web Self Care ("Geneva") product.  The second issue is the extent of access to the

Software Products, including the source code and back-end and front-end software, to which

Centillion is entitled.

Some background is helpful to understanding both issues.  Neither Centillion's complaint

nor its subsequent amended complaints mention by name any particular Convergys product(s).

Beginning in August 2004, Centillion sought to obtain from Convergys documents relating to

Convergys' billing analysis products, which it defined as including Geneva, Infinys, Atlys,

ICOMS, and WIZARD.  Specifically, Centillion requested at that time, *inter alia*, a working

copy of each software program and an electronic copy of the source code for each software

program .  In January 2005, Convergys responded that, subject to and without waiving a myriad

of objections, it would produce "responsive, non-privileged, non-objectionable, and non-immune

documents located after a reasonable search, to the extent such documents exist, in accordance

with the Protective Order as agreed  upon by the parties."

None of the Software Discovery had been produced by Convergys by November 2005

when Centillion filed its preliminary infringement contentions.  In its contentions, Centillion

referred specifically only to Convergys' Geneva product; it did not mention the other Software

Products or the fact that it had not yet received the Software Discovery that it had requested from

Convergys, although it did refer generally to the fact that it had received "limited discovery" from the Defendants to date and was basing its contentions on the information that it had at that time.  Over the next several months, the parties filed their briefs relating to claim construction; none of that briefing refers specifically to Geneva or to any other Convergys product.

In March and April 2006, the parties conferred regarding Convergys' failure to produce the Software Discovery.  Convergys offered to make available to Centillion for inspection the latest version of the Geneva product, but proposed to restrict Centillion's access to "the same ability as an end user to access the database on the server," refusing to make available the non-public server, the source code to the server system, and the database on the server, and refusing to permit Centillion's expert to utilize tools for programming, word processing, database, and spreadsheets in conjunction with the inspection.  Convergys further agreed to produce only a "reasonable amount" of the source code for the Geneva product in hard copy, rather than the entire source code sought by Centillion.

In August 2006, during the parties' negotiations regarding the scope of the Software Discovery, Convergys informed Centillion that it would not produce information relating to any product other than Geneva, since only Geneva was included in Centillion's claim charts and infringement contentions.  In response, Centillion prepared and served claim charts for the ICOMS, WIZARD, and Atlys products on October 20, 2006.[1]  In the meantime, in September 2006, Convergys conducted a demonstration of the Geneva product for Centillion, which,

---

[1]Centillion did not prepare claim charts regarding the Infinys product based upon representations by Convergys that the Geneva product provided the billing component of Infinys and therefore any infringement would be by Geneva.  However, based upon statements on Convergys' website, Centillion is now unsure whether that is, in fact, the case, and therefore seeks to inspect the Infinys product to determine where the billing processes occur in the Infinys product.

according to Centillion, "provided limited insight into the functioning of the product," and,

"[m]ore importantly . . . revealed that infringement may occur at the post-processing phase."

However, Convergys continued to refuse to give Centillion access to the server-software portion

of the Geneva product, and also refused to produce the technical documentation for the Geneva

source code.

In October 2006, Centillion served new discovery requests in which it sought the

following:  "(1) systems utilized by Convergys containing or comprising each of the

Software Products, (2) billing analysis systems having installed therein each of the Software

Products, (3) any evolution to Infinys from these systems and (4) any integration of Infinys with

these systems."  Convergys objected to the requests and stated that it was "preparing a motion to

strike Centillion's supplemental infringement contentions for all products and services other than

Geneva Web Self Care as untimely and will not make available for inspection any testing

systems related to products and services other than Geneva Web Self Care unless and until the

motion is resolved in Centillion's favor."  No motion to strike has been filed to date.

<u>Discussion</u>

Federal Rule of Civil Procedure provides that a party is entitled to discovery "regarding

any mater, no privileged, that is relevant to the claim or defense of any party."  Convergys takes

the position that discovery regarding its products other than Geneva are not relevant to

Centillion's claims because Centillion's preliminary contentions and initial claim charts

identified only Geneva as an infringing product.  It is unclear why Centillion did not include all

of the Software Products in its preliminary contentions; it is also unclear why it did not move to

compel the Software Discovery much sooner than it did, although since apparently it did not

need the information for its *Markman* briefing, it was not unreasonable for it to concentrate on

4

that briefing first and then turn to resolving the dispute regarding the Software Discovery. However, it is disingenuous for Convergys to claim that only its Geneva product is relevant to the claims and defenses in this case when its own counterclaim expressly asserts that "[n]o claim of the '270 patent can validly be construed to cover *any product* made, used, sold, offered for sale, or imported by Convergys," thus putting at issue all of Convergys' electronic telephone billing products. Further, while Convergys accuses Centillion of playing "hide the ball" by "concealing its intent to identify four new accused products until well after the completion of the claim construction briefing," this, too, is disingenuous; inasmuch as Centillion has sought discovery regarding all of the Software Products for almost three years now, it could be said that Convergys is the one who has "hidden the ball" by refusing to produce it.

Had Convergys provided the Software Discovery in a reasonably timely manner and Centillion had failed to include the other Software Products in its preliminary infringement contentions, Convergys' arguments would be well taken. However, in light of Convergys' own intransigence in producing discovery that was requested over a year before Centillion filed its initial preliminary infringement contentions, the Magistrate Judge will not disallow the discovery based upon the incompleteness of those contentions.

Convergys argues that it will be prejudiced if the Software Discovery is permitted because it prepared its claim construction briefing based upon its assumption that Geneva was the only infringed product. Convergys does not elaborate on this claim or provide any details regarding how its *Markman* briefing would have been different had been aware that all of the Software Products were at issue. However, in the interests of ensuring that the Court has before it all relevant issues when it makes its claim construction ruling, **within 14 days of the date of this Entry** Convergys shall file a submission which sets forth, in detail, any supplemental

5

briefing to which it believes it is entitled as a result of the fact that the additional Software Products will be at issue in this case; specifically, Convergys shall explain what, if any, additional terms it believes the Court should address and why, and in what other material ways, if any, it would modify its claim construction briefing in light of the additional products.[2] Centillion should not file a response to this submission unless invited to do so by the Court.  To the extent Convergys believes it will be prejudiced by any delay in the *Markman* process that may result, it should remember that it contributed significantly to that delay by failing to respond to Centillion's discovery requests.

The second issue raised in Centillion's motion is the extent of access to the Software Products to which it is entitled.  Convergys does not claim in its response to the instant motion that Centillion is not entitled to the Software Discovery that it seeks, but only expresses general concern regarding the terms of the protective order which will be applicable to it, without explaining what terms it seeks and why those terms are necessary and appropriate.  In the absence of any specific argument to the contrary, the Magistrate Judge finds appropriate Centillion's proposal that its expert have access to the source code at his office in California subject to the terms of the protective order that already is in place in this case.  Convergys also asserts–without explanation–that it does not have a working copy of the Geneva software.  The Magistrate Judge is somewhat perplexed by this assertion, which Centillion explains is based upon Convergys' position that "unless its software does exactly what Centillion's initial claim chart stated, it 'does not possess a working copy of the Geneva product' as Centillion has described it."  It is clear that Centillion is entitled to a working copy of the Geneva software; to

---

[2]If Convergys determines that it is satisfied with the *Markman* briefing as it stands, its submission should so state.

the extent that the parties need to work together to determine what exactly that means, they shall do so promptly and in good faith.

Subject to the protective order in this case, Convergys shall produce the Software Discovery relating to Geneva **within 20 days of the date of this Entry** and shall produce the remaining Software Discovery **within 45 days of the date of this Entry**.

SO ORDERED:   05/01/2007

_William T Lawrence_
Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

7