UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **CENTILLION DATA SYSTEMS, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:04-cv-73-LJM-WTL |
| | ) |
| **CONVERGYS CORPORATION, et al.,** | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |
| **QWEST CORPORATION, et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| **CENTILLION DATA SYSTEMS, LLC, et al.,** | ) |
| | ) |
| Defendants. | ) |

### ENTRY REGARDING MOTION TO ENFORCE ENTRY

This cause is before the Magistrate Judge on the motions filed by Centillion Data Systems, LLC, and CTI Group (Holdings), Inc., (collectively "Centillion") entitled Motion to Enforce Motion to Compel and Motion for Protective Order Entered December 19, 2006, and for Sanctions. The motion is fully briefed, and the Magistrate Judge, being duly advised, resolves the issues raised in the motion as set forth below.

As the title of its motion suggests, Centillion asserts that Qwest Corporation, Qwest Communications International, Inc., and Qwest Communication Corporation (collectively "Qwest") have failed to comply with a previous order of the Magistrate Judge. In that order, the Magistrate Judge rejected Qwest's argument that it should not be required to respond to discovery requests regarding non-infringement and damages until after the Court's *Markman*

ruling. Centillion argues that Qwest has thwarted the Magistrate Judge's directive to "respond to Centillion's interrogatories and set forth its contentions clearly and completely based upon its claims and defenses as they now stand" and that Qwest should be sanctioned for its failure to cooperate in the discovery process.

With regard to Qwest's non-infringement contentions, the Magistrate Judge determines that Qwest has provided sufficient information to inform Centillion what its position regarding non-infringement (including the doctrine of equivalents) is. As Qwest argues, articulating non-infringement contentions often are akin to attempting to prove a negative, and the Magistrate Judge believes that Qwest has made a good faith effort to comply with the previous order to set forth its claims with regard to non-infringement.[1] Centillion's motion as it relates to non-infringement contentions–which, frankly, strikes the Magistrate Judge as motivated more by the hope of hitting the sanctions jackpot rather than actually advancing this litigation–is denied.[2]

With regard to Qwest's invalidity contentions, however, Centillion raises a more valid concern. As Qwest describes it, it "has analyzed scores of prior art references. As a result of that analysis, Qwest identified references that are in the field of the alleged invention of the patent-in-suit, and further provided detailed claim charts for the most relevant prior art located thus far." Qwest Brief at 5. Qwest also has produced claim charts that were provided during the

---

[1]Centillion complains that Qwest has not provided it with information regarding the "Call Accounting and Management Software" product that is referenced on Qwest's website. Qwest, however, has stated unequivocally that that "is not and has never been a product provided by Qwest." Qwest's Brief at 8 n.2. Qwest obviously cannot provide information that it does not have (or, apparently, does not exist). If Centillion believes that Qwest is withholding something, perhaps that is a topic for a deposition or some additional discovery to determine why a non-existent product is referenced on the website.

[2]Qwest is correct that the Magistrate Judge's previous admonition to counsel regarding needlessly complicating this litigation was directed to all counsel, not just Qwest's counsel.

2

reexamination process and additional claim charts that were submitted in a different lawsuit against Centillion. Qwest has not provided claim charts for all of the prior art references that it has identified, however, and that is what concerns Centillion.

Qwest explains that it "has identified the non-charted prior art references to show, in part, that the alleged invention of the patent-at-issue was in a very crowded technical field, and that any patent protect ion would be very narrow." *Id.* at 12. To the extent that Qwest does not intend to interject any more specific analysis of these additional prior art references, but simply to refer generally to the crowded field, there is no problem. However, Qwest's brief could be read as suggesting that it has an unlimited right to submit additional claim charts (or otherwise set forth more specific arguments regarding specific items of prior art) in the future. First, Qwest notes that 35 U.S.C. § 282 provides for the identification of prior art references thirty days prior to trial. However, § 282 does not provide a litigant with a pass if it fails to comply with the case-specific deadlines established by the court. *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 551 (Fed. Cir. 1998) ("[A]lthough § 282 sets a minimum period for the identification of prior art to be introduced as evidence of anticipation, a specific judicial directive for the timing of discovery establishes the procedures to which the parties are bound."). In this case, Qwest has been specifically directed to provide its invalidity contentions in response to Centillion's interrogatories and it has had more than ample time to do so. To the extent that Qwest believes that § 282 trumps the deadline established by the Magistrate Judge's order, it is mistaken.

Qwest also argues that "[t]he *Markman* ruling can make certain prior art references more relevant, and others less relevant . . . [and it is] likely that the responses will need to be amended or supplemented once the *Markman* ruling is issued." Qwest Brief at 12. Qwest notes that the Magistrate Judge "specifically ordered that 'Qwest *may supplement or amend* its responses on

3

these issues if necessary *after it receives the Court's claim construction ruling*.'" *Id.* at 6 (emphasis in original). *Qwest* has it almost correct, but it has failed to emphasize the most critical words in the quoted sentence – *if necessary*. In other words, any supplementation that occurs after the *Markman* ruling will have to have been necessitated by that ruling and the fact that the Court construed a term in a different manner than that urged by Qwest.[3] Based upon Qwest's brief as a whole, the Magistrate Judge believes that Qwest understands that fact; however, Centillion's desire for clarity is not unreasonable based upon some of the correspondence between the parties and some of the language in Qwest's interrogatory responses. Centillion may rest assured that Qwest will not be permitted to amend or supplement its invalidity contentions except to the extent that the amendment or supplementation is necessary because of the Court's *Markman* ruling. In other words, if Qwest has not by now provided specific information about the import of a particular prior art reference, it will not be permitted to do so later except as required by the manner in which the Court resolves the claim construction issues, and Qwest should be prepared to articulate the justification for any such amendment or supplementation.

One final note: Centillion asserts that Qwest has failed to respond to that portion of Interrogatory No. 4 that seeks "the education, qualifications, expertise, experience level, and any other considerations Defendant contends to be relevant to the skill of a person of ordinary skill in the art." To the extent that it has not yet done so, Qwest shall provide this information to Centillion **within 10 days of the date of this Entry**.

---

[3] Obviously, if Qwest were to become aware of additional prior art later in the litigation that, too, might provide a basis for supplementing its interrogatory answers.

SO ORDERED: 10/04/2007

*William T Lawrence*

Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification