UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CENTILLION DATA SYSTEMS, LLC,<br>    Plaintiff,<br><br>  vs.<br><br>CONVERGYS CORPORATION, QWEST<br>COMMUNICATIONS INTERNATIONAL,<br>INC., and QWEST CORPORATION,<br>    Defendants,<br>-----------------------------------------------------------<br>QWEST CORPORATION and QWEST<br>COMMUNICATIONS CORPORATION,<br>    Plaintiffs,<br><br>  vs.<br><br>CENTILLION DATA SYSTEMS, LLC, and<br>CTI GROUP (HOLDINGS), INC.,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  1:04-cv-00073-LJM-WTL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER ON DEFENDANTS' MOTIONS

This cause is now before the Court on defendants', Convergys Corporation, Qwest Communications International and Qwest Corporation (the later two defendants, collectively, "Qwest") (all defendants collectively, "Defendants"), Motion to Stay and Motion for Summary Judgment as to their claim that plaintiff's, Centillion Data Systems, LLC ("Centillion"), patent, U.S. Patent No. 5,287,270, Feb. 15, 1994 (the "'270 patent"), is invalid under 35 U.S.C. § 112 for lack of a written description and lack of enablement. Specifically, Defendants contend that Centillion admitted that a plain meaning construction of the term "as specified by the user" is unsupported by the intrinsic evidence. Moreover, Defendants claim that there is no expert support for Centillion's

assertion that the '270 patent enables a person of ordinary skill in the art to practice the invention as the Court has construed the "as specified by the user" term.

For the reasons stated herein, the Court **GRANTS** Defendants' Motion for Summary Judgment.

## I. BACKGROUND

The '270 patent is directed to billing systems that may be utilized by a service customer to manipulate usage and cost information from a service provider, such as a telecommunications company or credit card company. '270 Patent, col. 1, l. 15-20. In its Order on Claim Construction, the Court considered the parties' arguments with respect to several terms in claim 1 of the patent. Claim 1 reads:

> **1.** A system for presenting information concerning the actual cost of a service provided to a user by a service provider, said system comprising:
>
> storage means for storing individual transaction records prepared by said service provider, said transaction records relating to individual service transactions for one or more service customers including said user, and the exact charges actually billed to said user by said service provider for each said service transaction;
>
> data processing means comprising respective computation hardware means and respective software programming means for directing the activities of said computation hardware means;
>
> means for transferring at least a part of said individual transaction records from said storage means to said data processing means;
>
> said data processing means generating preprocessed summary reports *as specified by the user* from said individual transaction records transferred from said storage means and organizing said summary reports into a format for storage, and manipulation and display on a personal computer data processing means;

> means for transferring said individual transaction records including said summary reports from said data processing means to said personal computer data processing means; and
>
> said personal computer data processing means being adapted to perform additional processing on said individual transaction records which have been at least in part preprocessed by said data processing means utilizing said summary reports for expedited retrieval of data, to present a subset of said selected records including said exact charges actually billed to said user.

*Id.* col. 31, l. 39, to col. 32, l. 6 (emphasis added).

With respect to the claim term "as specified by the user," the Court wrote as follows:

> The term "as specified by the user" is read in the following element: "said data processing means generating preprocessed summary reports as specified by the user from said individual transaction records transferred from said storage means . . . ." '270 Patent, col. 31, ll. 56-59. Defendants contend that this term should be construed to require that the summary reports be "pre-selected by the service customer . . . ." Joint Cl. Constr. Chart, at 2. Defendants' expert, Dr. Dunsmore asserts that the phrase "specified by the user" has a time-honored plain meaning and means "actively selected by the user." Dunsmore Decl. ¶ 23. Defendants claim that there is no support for the meaning of this term in the specification, and that the Court must construe this term using its plain meaning rather than rewrite the claim language, as proposed by Centillion, even if it would mean invalidating the claim for lack of a written description. Defs.' Ans. Mem. on Cl. Constr., at 29-30 (citing, *inter alia*, *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004); *Generation II Orthotics, Inc. v. Med. Tech., Inc.*, 263 F.3d 1356, 1365 (Fed. Cir. 2001)).
>
> Centillion argues that the Court should construe the term as "specific to the user." Joint Cl. Constr. Chart, at 2. Centillion asserts that Defendants have ignored the alternative definition of the verb "specify," which is "'to make specific: give a specific character or application to . . . .'" Pl.'s Reply Mem. on Cl. Interp. ("Pl.'s Reply"), at 16 (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENG. LANGUAGE UNABRIDGED 2187 (3d ed. 1981), hereinafter "WEBSTER'S THIRD UNABRIDGED"). Centillion states that this alternative definition is consistent with the specification, which teaches that the transaction records are sorted by specific customer or user prior to generation of the summary reports. *Id.* at 17. In other words, the claim states that the summary reports are sorted such that they are specific to the user. This construction, Centillion contends, is the most consistent with the language of the claims prior to the inventor's voluntary modification of this element, which added the "specified by" language. *Id.* Prior to modification, the element read: "selecting . . . records relating to service usage and exact charges for said user

3

> . . . ." Pl.'s Ex. 8, Amendment, App. Ser. No. 07/984,374, June 30, 1993. Moreover, Centillion argues that the language used by the inventors in other claims to assert when the user controls the output also supports Centillion's definition for the "as specified by the user" phrase. Pl.'s Reply, at 18-19 (citing claims 13 and 47). In such a case, Centillion asserts, where a claim is amenable to more than one construction, it should be construed to preserve its validity. *Id.* at 17-18 (citing, *inter alia*, *Wang Labs. Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1382 (Fed. Cir. 1999); *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 14 F.3d 1547, 1556 (Fed. Cir. 1997)).
>
> In the context of the '270 patent, the Court agrees with Defendants that the plain meaning of the phrase "as specified by the user" requires that the service customer select, or make specific, the character of the preprocessed summary reports. Even accepting the WEBSTER'S THIRD UNABRIDGED definition of "specified" as correct, Centillion's construction of the phrase "as specified by the user" changes the verb of the phrase and changes the subject of the phrase as well. Such a construction would do exactly what the Federal Circuit has cautioned against: it would rewrite the claim language. *See Chef Am., Inc.*, 358 F.3d at 1374 (stating that the Federal Circuit "repeatedly and consistently has recognized that courts may not redraft claims"). Centillion's construction contorts the plain meaning of the phrase too much.
>
> The Court is not persuaded by Centillion's other arguments that the plain meaning is changed by the language of other claims or the specification. The elements that require the user to control the data is just that: a modification of another claim element that speaks to a direct relationship between the user and the data. The claim element in which the "as specified by the user" term appears does not necessarily require the user to directly control the data processing means. Rather, the phrase leaves open the possibility that the user's instructions are carried out by a third-party. Such a possibility is likewise not foreclosed by the specification where it teaches that the preprocessing could be carried out by the service provider or a third-party processor. '270 Patent, col. 3, l. 66-col. 4, l. 2 ("These functions may be performed by a third party processor engaged in the business of providing such services to service providers and their subscribers, or by the provider itself . . . .").
>
> There is no other reasonable interpretation to the phrase "as specified by the user:" the phrase requires that the service customer select, or make specific, the character of the preprocessed summary reports. For this reason the Court concludes that the term "as specified by the user" means "the service customer selects, or makes specific, the character of."

Order on Cl. Constr. at 32-34.

In addition to the arguments referenced by the Court above, Centillion made the following statements in its briefs:  (1) "Defendants' proffered definition would require the user to pre-select which summary reports are to be pre-processed by the data processor. Centillion can find no support for Defendants' construction in the intrinsic evidence."  Pls.' Mem. on Cl. Interp. at 32; (2) "Defendants' proffered definition, which would require the user to 'select the reports to be generated in the preprocessing stage and subsequently transferred to the customer,' is ***admittedly*** unsupported by the specification."  Pls.' Reply Mem. on Cl. Interp. at 17.  These statements were made, in part, to show that a system that required user input pre-sort would be impractical.  *Id.*

## II. STANDARDS

### A. SUMMARY JUDGMENT

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990).  Motions for summary judgment are governed by Federal Rule of Civil Procedure 56 (c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  A genuine issue

of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## B. INVALIDITY

Section 112, ¶ 1, states:

> The specification [of a patent] shall contain a written description of the invention, and the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112, ¶ 1. The written description requirement ensures "that the inventor possessed the technologic information for which exclusivity is claimed, and discloses the invention to the public." *Space Sys./Loral, Inc. v. Lockheed Martin Corp.*, 405 F.3d 985, 987 (Fed. Cir. 2005). Although the written description "need not include information that is already known and available to the experienced public, [it] must be in sufficient detail to satisfy the statutory requirements, employing '[w]ords, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention.'" *Id.* (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)).

Section 112, ¶ 1 also "demands that the patent specification enable 'those skilled in the art to make and use the full scope of the claimed invention without "undue experimentation."'" *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195 (Fed. Cir. 1999) (quoting *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (quoting *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993)). "The scope of enablement . . . is that which is disclosed in the specification plus the scope of the enablement." *Id.* at 1196.

A patent is presumed valid; therefore, it is Defendants' burden to show by clear and convincing evidence that the written description and enablement requirements of 35 U.S.C. § 112, ¶ 1, are not met. *Sitrick v. Dreamworks, LLC*, __ F.3d __, No. 2007-1174, 2008 WL 269443, at *4 (Fed. Cir. Feb. 1, 2008). Whether a claim meets the requirements of § 112, ¶ 1, is a question of law, which is based on underlying factual determinations. *See id.*

### III. DISCUSSION

Defendants' first contention is that Centillion admitted that the specification lacked a written description and failed to enable one of ordinary skill in the art to practice the invention under the Court's construction for the term "as specified by the user." The Court disagrees. The crux of Centillion's admission, if it could be labeled an admission at all, was directed to Defendants' insistence that the "as specified by the user" required the user to be in active communication with the data processing means functions of the system. The Court disassociated its construction with this portion of Defendants' proposed definition when it stated that the term "does not necessarily require the user to directly control the data processing means." Order on Cl. Constr. at 34. In other words, the user input could be made prior to a third-party using the '270 patented system to process the user's data. *Id.* (citing '270 Patent, col. 3, l. 66-col. 4, l. 2). Defendants' argument that Centillion admitted that the specification lacked a written description and failed to enable claim 1 as construed by the Court fails for that reason.

Turning to the substantive arguments regarding lack of a written description and enablements, the Court concludes that Centillion's experts have sufficiently raised a question of fact on the issue to survive Defendants' Motion for Summary Judgment. First, the specification teaches that the '270 patented invention is directed to a billing system that would allow a service customer to manipulate its usage and cost information from a service provider. '270 Patent, col. 1, l. 15-20. The specification also discloses that there were other ways to manipulate this data that were unsatisfactory. *Id.* col. 2, ll. 8-57. Likewise, the patent teaches that the system described therein could be used by either the service customer itself, the service provider, or a third-party processor. *Id.* col. 3, l. 66-col. 4, l. 2). These disclosures all indicate that the inventors contemplated that the service customer and the user of the '270 patented system would communicate with each other about

the service customer's needs.  In the context of claim 1, that means that the entity who uses the system therein could receive input from the user, the service customer, before running the system such that the preprocessed summary reports capture the data the service customer is most interested in.  Centillion's expert, Daniel Briere ("Briere"), asserts that a person of ordinary skill in the art would so read the specification.  Briere Decl. ¶¶ 19-24.

Specifically, Briere states that one of ordinary skill would know that customers routinely specified the reports it wanted to receive.  *Id.* ¶ 17.  Customers would also need to specify particularized information, including accounting codes, as content for their bill.  *Id.* ¶¶ 19-24. According to Briere, customer specification of how it wanted its billing reported was a known trend at the time of the invention.  *Id.* ¶ 21, n.3 & Ex. C-3.

Finally, the patent is not without references to customer information that must be communicated to the entity that utilizes the system in order for the system to perform as disclosed. In the Background of the Invention, the '270 patent discloses that the system addresses the need of large-volume service customers "to conveniently and affordably analyze and manipulate call-detail and other telecommunications transaction information by computer . . . ." '270 Patent, col. 2, ll. 58-64.  The patent teaches that the service customer "subscribe[s]" for the service with a service provider or third-party processor so that the service provider or third-party can extract the appropriate billing information.  *Id.* col. 3, ll. 6-13.  *See also id.* col. 3, ll. 29-33 (describing the selection of service provider billing information such that the electronically-formatted bill is exactly reconciled with the paper version of the bill) & ll. 57-65 (describing how the patented invention obtains appropriate billing information to optimize reports for each subscriber).  The patent also teaches that the patented system "accumulates data to produce for each customer a variety of precalculated summary reports and graphs which are included on the diskette bill and are thus

available for display on the user's personal computer with minimal additional personal computer processing." *Id.* col. 7, ll. 49-54. *See also id.* col. 10, ll. 17-24 (describing the preferred embodiment's preprocessing step). These references imply that the system incorporates user input to develop the preprocessed summary reports because they are specific to each user. Moreover, the detailed description of the preferred embodiment describes that the information retrieval process involves operator responses and/or input. *Id.* col. 11, ll. 17-48. Such a disclosure, in conjunction with the other disclosures in the patent and the knowledge of one skilled in the art at the time of the invention, would enable someone looking at claim 1 to practice the "as specified by the user" element.

For the foregoing reasons, the Court concludes that there is enough evidence within the '270 patent and with Centillion's expert testimony from which a jury could conclude that the written description and enablement requirements of § 112, ¶ 1, are met. Therefore, Defendants' Motion for Summary Judgment should be **DENIED**. The Court, having resolved Defendants' Motion for Summary Judgment in favor of Centillion, hereby **DENIES** Defendants' Motion to Stay as **MOOT**.

## IV.  CONCLUSION

For the reasons stated herein, defendants', Convergys Corporation, Qwest Communications International and Qwest Corporation, Motion for Summary Judgment is **DENIED**.  Defendants', Convergys Corporation, Qwest Communications International and Qwest Corporation, Motion to Stay is **DENIED as MOOT**.

IT IS SO ORDERED this 26th day of February, 2008.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Electronically distributed to:

Vincent J. Belusko
MORRISON & FOERSTER LLP
vbelusko@mofo.com

Dale Buxton II
MORRISON & FOERSTER, LLP
dbuxton@mofo.com

David C. Campbell
BINGHAM MCHALE LLP
dcampbell@binghammchale.com

James Dimos
LOCKE REYNOLDS LLP
jdimos@locke.com

Phillip J. Fowler
BINGHAM MCHALE LLP
pfowler@binghammchale.com

Hector G. Gallegos
MORRISON & FOERSTER LLP
hgallegos@mofo.com

Michael C. Greenbaum
BLANK ROME, LLP
greenbaum@blankrome.com

Edward Han
HOWREY SIMON ARNOLD & WHITE LLP
hane@howrey.com

Denise Catherine Lane-White
BLANK ROME, LLP
lane-white@blankrome.com

Grant S. Palmer
BLANK ROME, LLP
palmer@blankrome.com

Randall R. Riggs
LOCKE REYNOLDS LLP
rriggs@locke.com

James W. Riley Jr.
RILEY BENNETT & EGLOFF LLP
jriley@rbelaw.com

Hemant Keeto Sabharwal
BLANK ROME LLP
sabharwal@blankrome.com

Brian Sherwood Seal
HOWREY,LLP
sealb@howrey.com

Matthew J. Siembieda
BLANK ROME LLP
siembieda@blankrome.com

Leonard D. Steinman
BLANK ROME, LLP
lsteinman@blankrome.com

Joel E. Tragesser
LOCKE REYNOLDS LLP
jtragesser@locke.com

Mark D. Wegener
HOWREY SIMON ARNOLD & WHITE
wegenerm@howrey.com

Peter S. Weissman
BLANK ROME, LLP
weissman@blankrome.com

Michael Douglas White
BLANK ROME, LLP
white@blankrome.com

Victor M. Wigman
BLANK ROME LLP
wigman@blankrome.com