UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **CENTILLION DATA SYSTEMS, LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO.  1:04-cv-73-LJM-WTL |
| ) | |
| **CONVERGYS CORPORATION, et al.,** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| **QWEST CORPORATION, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| **CENTILLION DATA SYSTEMS, LLC,** ) | |
| **et al.,** ) | |
| ) | |
| Defendants. ) | |

### ENTRY REGARDING MOTION TO COMPEL QWEST TO PRODUCE DISCOVERY RELATING TO GOVERNMENT CONTRACTS AND FOR SANCTIONS

This cause is before the Magistrate Judge on the motion filed by Plaintiffs Centillion Data Systems, LLC, and CTI Group (Holdings), Inc., (collectively "Centillion") entitled Motion to Compel Qwest to Produce Discovery Relating to Government Contracts and for Sanctions. The motion is fully briefed, and the Magistrate Judge, having reviewed the parties' briefs and considered the arguments of counsel made during a recent discovery conference, **GRANTS IN PART AND DENIES IN PART** the motion as set forth below.

In this case, Centillion accuses Defendants Qwest Corporation, Qwest Communications International, Inc., and Qwest Communication Corporation (collectively "Qwest") of infringing upon a patent held by Centillion directed to a method and system for electronic billing,

processing, reporting and analysis of telephone charges ("the '270 Patent"). Centillion has identified the following Qwest products that it believes are infringing: Logic, IABS, Billmate, Qwest Control, Qwest Remote Control, Qwest Control Networx, CAMS, CRIS, and eBill Companion. Qwest denies infringement, alleges that the '270 Patent is invalid, and seeks declaratory judgment as to both non-infringement and invalidity.

Centillion argues in the instant motion that Quest improperly has failed to produce discovery relating to Qwest's numerous contracts with federal, state and local governments that Centillion believes include the Qwest Control, Qwest Control Networx, eBill Companion or Billmate products. The following discovery requests encompass the information at issue:

> INTERROGATORY NO. 9: Identify all licenses, contracts or agreements of any type either considered or actually entered into by Defendant regarding processing of telephone records … and for each license identify precisely what was licensed.
>
> INTERROGATORY NO. 10: For each month since February, 1994 through the present, state: (a) the number of telephone calls … billed through [or] processed by … any of Defendant's Billing Analysis Products …; (b) the number of telephone calls … presented to customers by any electronic media …; (c) the total number of telephone calls … billed or processed by each licensee of each of Defendant's Billing Analysis Products …; (d) the names of all customers who received billing transaction … through each of Defendant's Billing Analysis Products …; and (e) the names of all customers who have received customer billing transaction … through any electronic media… .
>
> INTERROGATORY NO. 11: For each month since February, 1994, through the present, identify all customers for each of Defendant's Billing Analysis Products, and for each customer, identify the call volume, call detail record volume, or billing transaction volume, processed by or for use with each of Defendant's Billing Analysis Products … the total revenue and net and gross profit to Defendant from the customer relating to each of Defendant's Billing Analysis Products, feedback, documents, and communications by or from the customer relating to each of Defendant's Billing Analysis Products, and the date the customer began to receive and the date the customer stopped receiving each of Defendant's Billing Analysis Products.
>
> REQUEST NO. 51: All documents summarizing computer processing services

or service bureau operations for any customer of Defendant related to any of Defendant's Billing Analysis Products… .

REQUEST NO. 52: All communications between Defendant and any of Defendant's customers related in any way to any of Defendant's Billing Analysis Products, billing analysis… .

REQUEST NO. 54: All contracts, licensing agreements, indemnification agreements or other agreements of any type and all communications relating to such contracts and/or agreements related in any way to any of Defendant's Billing Analysis Products.

REQUEST NO. 69: All documents relating to the sale or licensing a method or system for electronic billing, processing, reporting, and/or analysis of telephone charges.

REQUEST NO. 71: All documents or things from February 1994 through the present relating to sales or distribution agreements or other contracts for Defendant's Billing Analysis Products.

REQUEST NO. 84: All documents and things relating to the display, demonstration, marketing, offer for rent, offer for license, offer for sale, or rental, licensing, or sale of Defendant's Billing Analysis Products, including without limitation … communications with actual or potential customers, sales proposals … .

REQUEST NO. 136: All documents and things showing the difference, if any, between the Qwest Control portal and the Qwest Control Networx portal.

REQUEST NO. 137: All documents and things concerning any modifications, changes or revisions made to the Qwest Control portal to create the Qwest Control Networx portal.

REQUEST NO. 138: All documents and things upon which Qwest relies in asserting that the Qwest Control Networx portal does not infringe U S. Patent No. 5,287,270.

REQUEST NO. 139: All price lists for the Qwest Control Networx portal.

REQUEST NO. 190: Qwest make available for inspection the billing component of the Qwest Control Networx portal that has been (or is to be) deployed under the Networx Universal contract.

REQUEST NO. 191: Qwest make available for inspection the billing component of the Qwest Control Networx portal that has been (or is to be)

deployed under the Networx Enterprise contract.

In response to Centillion's motion, Qwest sets forth several reasons why it should not be required to produce the documents and provide the information at issue.

As an initial matter, Qwest asserts that discovery regarding the federal government contracts is not appropriate in this case because those contracts were entered into and executed by a Qwest entity who is not a defendant in this case, Qwest Government Services, Inc. ("QGSI"), and therefore, unless it amends its complaint to add QGSI as a Defendant, Centillion will not be able to assert any claims regarding the federal government contracts in this case. Centillion counters that Defendant Qwest Communications International, Inc., has held itself out as the entity that will be performing under the federal contracts and that, more importantly, the Qwest Defendants do not deny that they have control over the requested documents as that term is used in Federal Rule of Civil Procedure 34(a)(1). The Magistrate Judge agrees with Centillion that, under the circumstances of this case, naming QGSI as a party is not a prerequisite to obtaining discovery regarding the government contracts.[1]

Qwest also argues that any claim by Centillion for patent infringement arising out of products developed for the federal government must be brought by Centillion against the United States in the U.S. Court of Federal Claims pursuant to 28 U.S.C. § 1498(a). That statute provides:

> Whenever an invention described in and covered by a pa tent of the United States
> is used or manufactured by or for the United States without license of the owner
> thereof or lawful right to use or manufacture the same, the owner's remedy shall
> be by action against the United States in the United States Court of Federal

---

[1] The Magistrate Judge expresses no opinion regarding whether the currently named Qwest entities ultimately could be held liable for the contracts Qwest asserts were entered into by QGSI.

> Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
>
> . . .
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

In other words, if a federal government contractor, with the government's consent, has infringed upon a patent in order to provide the government with a product or service, the United States, not the contractor, is obligated to compensate the patentholder. However, the statute neither bars claims against the government contractor in such cases nor renders this court without jurisdiction to hear such claims; rather, it creates an affirmative defense that can be asserted by the contractor and which typically will be resolved by summary judgment. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed. Cir. 2002).

Centillion does not dispute the potential applicability of 28 U.S.C. § 1498(a) to Qwest's contracts with the federal government, but argues that Qwest has waived its affirmative defense under the statute because it did not plead it and did not mention it in its objections to the discovery requests at issue. Centillion further argues that even if § 1498 applies and it is not entitled to seek damages from Qwest relating to the federal government contracts, the discovery it seeks regarding those contracts is still relevant to the issue of commercial success.

The Magistrate Judge asked the parties to discuss the commercial success issue at the discovery conference, and Qwest advanced several reasons why it believes the government contract discovery is not relevant to the issue. First, Qwest argued that the proper inquiry was the commercial success of the sales and licensing of Centillion's own product, not the accused

infringing products. This is not consistent with Federal Circuit law, however. *See Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000) ("Our case law provides that the success of an infringing product is considered to be evidence of the commercial success of the claimed invention," and therefore it was error for the court to refuse to consider the success of the accused product.). In the event that Qwest's accused products are found to infringe, Qwest's success at selling or licensing those products–or, more specifically, products that use the accused products–will be relevant.

However, as Qwest notes, with regard to the recently awarded Networx contracts with the federal government, at this point in time Qwest has only been awarded the ability to bid for the federal government's business; whether it will ultimately get that business–in other words, whether the product it is offering ultimately will be commercially successful–remains to be seen. Therefore, Centillion is not entitled to conduct discovery with regard to the Networx contracts based upon its relevance to the issue of commercial success. As for Qwest's other federal, state and local government contracts, pursuant to which Qwest has provided or is now providing services, the information Centillion seeks is relevant at least to the issue of commercial success, and Centillion's motion to compel is **GRANTED** as to those contracts for that reason.[2]

As for the Networx contracts, whether Centillion is entitled to the discovery it seeks hinges upon whether 28 U.S.C. § 1498(a) applies in this case. Unfortunately, that issue is not yet ripe for determination. As previously noted, Centillion argues that Qwest has waived its

---

[2]Qwest asserts that it already has produced information regarding the other contracts; in addition, the Magistrate Judge notes that Centillion's discovery requests are quite broad. The parties are urged to work cooperatively to determine what additional information Centillion needs regarding the non-Networx government contracts; it is to neither party's benefit for discovery to be more expansive than is necessary.

affirmative defense under § 1498(a), but that is not necessarily the case. *See Carter v. U.S.*, 333 F.3d 791, 796 (7th Cir. 2003) ("The failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it."). The first issue that must be determined is whether Qwest is entitled to amend its answer to assert the affirmative defense, but Qwest has not yet moved to do so. If such a motion is filed and granted, the next issue would be whether § 1498(a) applies, which is a summary judgment issue. In light of the substantial burden and cost that would be associated with the discovery sought by Centillion regarding the Networx applications and contract, the Magistrate Judge determines that the wisest course of action is not to permit discovery with regard to the Networx applications and contracts until these issues are resolved. If ultimately they are resolved in Centillion's favor, Centillion then would be entitled to conduct that discovery. For now, however, the motion to compel is **DENIED** as it relates to Networx.

SO ORDERED: 03/10/2008

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification